UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEROME CASIMIR,

                Plaintiff,

v.

BRIDGECREST CREDIT COMPANY, LLC, DRIVETIME AUTOMOTIVE GROUP, INC., DRIVETIME CAR SALES COMPANY, LLC, and CARVANA LLC,

                Defendants.

Case No. 20-CV-274-JPS

**ORDER**

---

**1.**     **INTRODUCTION**

Now before the Court is Defendants Bridgecrest Credit Company, LLC,[1] DriveTime Automotive Group, Inc., and DriveTime Car Sales Company, LLC's (the "Moving Defendants") motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docket #12). On February 17, 2021, Plaintiff filed an amended brief in opposition to the motion, to which the Moving Defendants replied. (Docket #21, #22). The Court has reviewed these submissions and will grant the Moving Defendants' motion to dismiss.

---

[1] Defendants assert that Plaintiff incorrectly named "Bridgecrest Acceptance Corporation" as a defendant and should have named their related entity Bridgecrest Credit Company, LLC, instead. Like Defendants, the Court will refer to Bridgecrest Credit Company, LLC as "Bridgecrest" throughout this Order.

## 2. FACTUAL BACKGROUND

On January 17, 2018,[2] Plaintiff contracted with Defendant Carvana LLC ("Carvana") to purchase a 2015 Cadillac XTS. (Docket #8 at 3, #14-2, #14-3). Defendant Bridgecrest services Plaintiff's account with Carvana. (Docket #13 at 1–2). Plaintiff avers that he "never missed a monthly payment for over 3 years" and that "defendants" (plural) correctly reported this information to credit reporting agencies ("CRAs") on a monthly basis. (Docket #8 at 3). According to Plaintiff, in February 2020, "defendant" (singular) failed to furnish accurate and complete information regarding Plaintiff's credit history to CRAs in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). Plaintiff states that this caused his credit score to drop over 100 points. (*Id.*)[3]

On February 20, 2020, Plaintiff filed his initial complaint in this matter, alleging, *inter alia*, that Bridgecrest violated the FCRA. (Docket #1). Although Plaintiff had not yet served Bridgecrest, Bridgecrest contacted Plaintiff in an attempt to resolve this case. (Docket #13 at 2). In April 2020, Bridgecrest sent Plaintiff a proposed settlement agreement and "repeatedly corresponded with Plaintiff in an attempt to resolve his claims." (Docket #14 at 2). On June 15, 2020, Plaintiff and Bridgecrest, as well as the Moving Defendants,[4] entered into a "Full Settlement and Release of Claims" (the

---

[2] In his amended complaint, Plaintiff states that he entered into this contract with Carvana on January 16, 2018. (*See* Docket #8 at 3). However, the Moving Defendants have submitted copies of Plaintiff's agreements with Carvana, which are dated January 17, 2018, (*see* Docket #14-2, #14-3).

[3] According to a Bridgecrest employee, Plaintiff filed for bankruptcy protection in 2019, and as is customary, Bridgecrest deleted his "tradeline" once it received notice of his filing. (Docket #13 at 2, #14 at 2).

[4] As defined in the Settlement Agreement, "The Company" includes "DriveTime Automotive Group, Inc., Bridgecrest Acceptance Corporation,

"Settlement Agreement"). (Docket #14-3 at 2–4). Under the Settlement Agreement, the Moving Defendants agreed to allow Plaintiff to retain his vehicle and would resume reporting Plaintiff's credit information to major credit bureaus. (*Id.* at 2). Plaintiff also agreed to request dismissal of his complaint "with prejudice" within three days of signing the Settlement Agreement and provide the Moving Defendants with proof of dismissal by July 15, 2020. (*Id.* at 3). Moreover, the Settlement Agreement provides:

> Consider this Agreement as a **FULL AND FINAL SETTLEMENT AND RELEASE OF ALL CLAIMS that You may have against the Company. This applies to any and all known and unknown claims that You have against the Company, including but not limited to anything related to the purchase, use, financing, servicing, repair or maintenance of the Vehicle or the Contract ("Claims"). This release does not apply to breaches of this Agreement.**

(*Id.*)

Plaintiff, however, did not file a request for dismissal. Instead, on July 22, 2020, he filed a motion for leave to amend his complaint. (Docket #5). Unaware of any settlement discussions and the Settlement Agreement, the Court granted Plaintiff's motion, (Docket #7), on July 31, 2020, and Plaintiff's amended complaint, (Docket #8), became the operative pleading. Therein, Plaintiff alleges that Carvana and Bridgecrest violated the FCRA, for which he seeks punitive damages and attorney's fees and costs. (*Id.* at 4–5). He also claims that Bridgecrest is Carvana's affiliate and, as such, breached the terms of Plaintiff's January 17, 2018 agreement with Carvana.

---

Bridgecrest Credit Company, LLC, DriveTime Car Sales Company, LLC, DS Nominee Titleholder, LLC, SilverRock Group, Inc., and their affiliates, predecessors, successors, assigns, directors, officers and employees." (Docket #14-3 at 1).

(*Id.* at 5). Pursuant to this purported breach, Plaintiff asks the Court to enjoin Bridgecrest "from falsely reporting [Plaintiff's] auto payment to the credit bureau" and to award Plaintiff treble damages. (*Id.* at 6). Plaintiff also alleges that "Defendants" interfered with Plaintiff's contract with Carvana and again requests an injunction, as well as actual and punitive damages. (*Id.* at 6–7). Lastly, Plaintiff claims that the "Defendants" failed to report his information to CRAs and failed to provide him notice of their actions because of his race, in violation of 42 U.S.C. §§ 1981–1983. (*Id.* at 8).[5]

The Moving Defendants filed their motion to dismiss this case with prejudice, arguing that Plaintiff's claims are mooted by the Settlement Agreement, and thus, this Court no longer has subject-matter jurisdiction over those claims. (Docket #12, #13).

3.  **LEGAL STANDARD**

>   Under Article III, § 2 of the United States Constitution, federal court jurisdiction is limited to actual, ongoing controversies. When the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, the case is (or the claims are) moot and must be dismissed for lack of jurisdiction.

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007) (internal alterations, quotations, and citations omitted). "Where a settlement agreement has previously disposed of a claim, the claim is moot, courts lack subject-matter jurisdiction over the claim, and a Rule 12(b)(1) motion invoking the settlement agreement must be granted." *Staffing Advantage LLC v. Definitive Staffing Sols., Inc.*, Case No. 7:20-cv-00150-M,

---

[5]Plaintiff also adds a count for "Irreparable Injury" but does not make clear what type of relief he is seeking in relation to this alleged injury. (*See* Docket #8 at 7–8).

2021 WL 2426340, at *3 (E.D.N.C. June 14, 2021); *see also Lindell v. Landis Corp. 401(K) Plan*, 640 F. Supp. 2d 11, 14 (D.D.C. 2009) (construing defendants' 12(b)(6) motion for failure to state a claim as a motion pursuant to 12(b)(1) because "[c]laims that have been resolved by earlier settlement agreements, and therefore present no ongoing controversy, are moot."); *Majkowski v. Am. Int'l Grp., Inc.*, No. 08 CV 4842, 2008 WL 5272193, at *4 (N.D. Ill. Dec. 16, 2008) (dismissing the plaintiff's claims pursuant to Rule 12(b)(1) because "[t]he settlement agreement is a valid and enforceable document that binds the parties and moots [the plaintiff's] claims against [the defendant].")

When reviewing a motion for dismissal under Rule 12(b)(1), a court must "accept[] as true all well-pleaded factual allegations and draw[] reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Further, a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (internal quotation and citation omitted).

4.   ANALYSIS

As discussed, by signing the Settlement Agreement, Plaintiff released the Moving Defendants of "all known and unknown claims" that he has against them "related to the purchase, use, financing, [or] servicing . . . " of Plaintiff's Cadillac XTS. (Docket #14–3 at 3). Not only did Plaintiff and Associate General Counsel for the Moving Defendants sign the last page of the Settlement Agreement, but they also initialed each page of the same. (*See id.* at 2–4).

Plaintiff does not dispute that he entered into the Settlement Agreement. Instead, he argues that he believed he was entering into a contract with Carvana. (Docket #21 at 1). He now claims that "[u]pon closer review of the agreement plaintiff realized I were [sic] not dealing with Carvana LLC whom [sic] contracted with, but DriveTime that I had no contract with, whom I had an earlier dispute so I amended the complaint that is now upon this motion to dismiss."(*Id.* at 2). With little explanation, Plaintiff describes the Settlement Agreement as "unconscionable" and, thus, unenforceable because the parties did not have "meeting of the minds."[6] (*Id.* at 2–3).

"Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law." *Magallanes v. Ill. Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). To be sure, under Wisconsin law, "[t]o constitute an acceptance and the creation of a contract there must be a meeting of the minds upon all essential terms thereof." *Todorovich v. Kinnickinnic Mut. Loan & Bldg. Ass'n*, 298 N.W. 226, 227 (Wis. 1941). When determining whether there has been a "meeting of the minds," Wisconsin courts "examine[] both the wording of the contract as well as the surrounding circumstances in an attempt to discern the parties' intent." *Metropolitan Ventures, LLC v. GEA Assocs.*, 717 N.W.2d 58, 66 (Wis. 2006).

Plaintiff claims that the parties did not have "meeting of the minds," and, therefore, the Settlement Agreement is unconscionable. Yet he fails to

---

[6]Throughout his brief in opposition, Plaintiff refers to both the parties' Settlement Agreement and arbitration agreement as unconscionable because there was no meeting of the minds. (*See, e.g.,* Docket #21 at 1, 2–3, 5, 6). Because the Moving Defendants' motion to dismiss concerns the Settlement Agreement, the Court disregards Plaintiff's arguments regarding the unconscionability of the parties' arbitration agreement.

inform the Court as to which terms, exactly, the parties did not both agree. At most, Plaintiff suggests that he did not realize that he was dealing with the Moving Defendants, but believed he was dealing with Carvana. (Docket #21 at 2). However, the first page of the Settlement Agreement makes clear (in bold font and separated from other text) that the parties to the contract are Plaintiff and the Moving Defendants, as well as their other affiliated entities. (Docket #14-3 at 2). Notably, the Settlement Agreement does not refer to Defendant Carvana. (*See id.*) Moreover, an agency specialist with the Moving Defendants, not Carvana, sent Plaintiff the settlement offer on April 7, 2020. (Docket #23-1). Further, the Moving Defendants represent that Plaintiff never questioned their involvement in the settlement negotiations prior to signing the Settlement Agreement. (Docket #22 at 2).

To be sure, the Settlement Agreement states that "You and the Company entered into a Retail Installment Contract . . . to finance the purchase of the Vehicle from Us." (*Id.*) Notably, Plaintiff's Retail Installment Agreement (Docket #14-2) is between Plaintiff and Carvana. Yet, that Retail Installment Agreement states, albeit in small font, that the Retail Installment Agreement could be transferred to another entity. (Docket #14-2). Regardless, Plaintiff himself offers no explanation as to why he was confused as to which entities he was contracting with. He merely states that "[u]pon closer review of the agreement" he realized he was not dealing with Carvana. (Docket #21 at 2).

On the one hand, Plaintiff says that he "had no issue with Carvana," but, on the other hand, he avers that he thought was making an agreement with Carvana "upon information and belief" that, by doing so, "[Carvana LLC] would speedily return [his] filing fees and reinstate [his] trade line . . . ." (*Id.* at 1). It is unclear as to why Plaintiff would mistakenly believe

he was entering into the Settlement Agreement with Carvana if he had no issues with that party. Moreover, Plaintiff names only "Bridgecrest Acceptance Corporation" as a defendant in his initial complaint and does not mention Carvana. (*See* Docket #1). Plaintiff added Carvana as a Defendant in his amended complaint, which he filed after signing the Settlement Agreement. Based on the foregoing, the Court finds Plaintiff's argument that he did not realize that he entered into the Settlement Agreement with the Moving Defendants, as opposed to Carvana, both ill-founded and unavailing.

By way of this valid Settlement Agreement, which Plaintiff signed on June 15, 2020, he released all known and unknown claims that he had or may have had against the Moving Defendants related to their servicing or financing of his vehicle. (Docket #14-3 at 3). Therefore, Plaintiff waived the claims in his amended complaint because they stem from the alleged actions of the Moving Defendants that occurred prior to June 15, 2020. Because Plaintiff's claims against the Moving Defendants are moot, the Court does not have subject-matter jurisdiction over such claims.

5.   **CONCLUSION**

Based on the foregoing, the Court will grant the Moving Defendants' 12(b)(1) motion to dismiss, (Docket #12). At this juncture, the Court also denies as moot the Moving Defendants' alternative requests to: (1) compel arbitration regarding and recover costs stemming from Plaintiff's failure to promptly dismiss his claims against the Moving Defendants as required by the Settlement Agreement, and (2) dismiss DriveTime Automotive Group, Inc. and DriveTime Car Sales Company, LLC due to Plaintiff's insufficient service of process upon the same. (*Id.*)

Finally, the Court notes that Plaintiff has failed to serve Carvana. Therefore, this Order shall serve as notice to Plaintiff that the Court may, within 21 days from the date of this Order, dismiss this case as to Carvana without prejudice due to Plaintiff's failure to serve Carvana pursuant to Civil Local Rule 41(a).[7]

Accordingly,

**IT IS ORDERED** that Defendants Bridgecrest Credit Company, LLC, DriveTime Automotive Group, Inc., and DriveTime Car Sales Company, LLC's motion to dismiss (Docket #12) pursuant to Federal Rule of Civil Procedure 12(b)(1) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Bridgecrest Credit Company, LLC, DriveTime Automotive Group, Inc., and DriveTime Car Sales Company, LLC's alternative requests (Docket #12) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Defendants Bridgecrest Credit Company, LLC, DriveTime Automotive Group, Inc., and DriveTime Car Sales Company, LLC be and the same are hereby **DISMISSED** with prejudice from this action for lack of subject-matter jurisdiction.

Dated at Milwaukee, Wisconsin, this 21st day of July, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[7] "Where the plaintiff has not effected service of process within the time required by Fed. R. Civ. P. 4(m), and the defendant has not waived service under Rule 4(d), after 21 days' notice to . . . the plaintiff if pro se, the Court may enter an order dismissing the action without prejudice."